UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PARSRAM CHETTANA,

                          Petitioner,

          v.                                              9:15-CV-0028
                                                         (MAD)

STEVEN RACETTE,
                          Respondent.
_____

APPEARANCES:                              OF COUNSEL:

PARSRAM CHETTANA
06-A-2432
Petitioner, pro se
Clinton Correctional Facility - Annex
P.O. Box 2002
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN               LISA E. FLEISCHMANN, AAG
New York State Attorney General
120 Broadway
New York, New York 10271
Attorneys for Respondent

MAE A. D'AGOSTINO
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

         Petitioner Parsram Chettana filed a petition for a writ of habeas corpus, a

memorandum of law and exhibits pursuant to 28 U.S.C. §2254.  Dkt. No. 1, Petition ("Pet.");

Dkt. No. 1-1, Exhibits 1-8; Dkt. No. 1-2, Affirmation & Memorandum of Law in Support of

Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2254 ("Mem.").  On May 8,

2015, the Court granted respondent's request to limit his answer to the issue of whether the

petition was timely filed. Dkt. No. 11, Text Order. On May 15, 2015, respondent filed his limited answer, memorandum of law and state court records. Dkt. No. 12, Answer; Dkt. No. 12-1, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. No. 13, State Court Record ("SR"). Petitioner filed a letter opposing respondent's request to limit his answer to the issue of timeliness, and a reply addressing respondent's arguments. Dkt. No. 16, Letter; Dkt. No. 19, Reply; Dkt. No. 19-1, Memorandum of Law in Support of Petitioner's Reply to Respondent's May 15, 2015 Answer ("Reply Mem.").[1]

For the reasons that follow, the petition is dismissed as untimely.

## II.    RELEVANT BACKGROUND

### A.    Judgment of Conviction and Sentencing

On February 23, 2006, petitioner was convicted by a Schenectady County jury of first degree rape (two counts) and endangering the welfare of a child. Pet. at 1; R. Mem. at 3. The charges stemmed from petitioner's arrest for raping an 11-year old girl on June 28, 2005. R. Mem. at 3.

On April 25, 2006, petitioner was sentenced to serve an aggregate term of 24 years in prison followed by 5 years post-release supervision. Dkt. No. 13 at SR 235-36, Sentencing Transcript; Dkt. No. 1-2 at 6. At sentencing, counsel stated "there will be a Notice of Appeal filed[.]" *Id.* at SR 232. Counsel further stated, "I have advised my client of his right to appeal. I will take the step of filing the Notice of Appeal on his behalf." *Id.* at SR 237-38. The trial court further advised petitioner

---

[1] The cited page numbers for all of petitioner's submissions refer to those generated by the Court's electronic filing system ("ECF").

And so we're clear, you have thirty days to appeal the sentence of this Court. If you cannot afford an attorney, Mr. Chettana, you can make application to the Appellate Division Third Department for assigned counsel for that purpose. Besides thirty days to appeal the sentence you have ninety days to perfect that appeal.

Dkt. No. 13 at SR 238.

### B.     Motion for Extension of Time to File a Notice of Appeal

On September 21, 2009, petitioner wrote to the Appellate Division, Third Department, to inquire about the status of his appeal. Dkt. No. 1-2 at 6; Dkt. No. 13-1 at SR 385, Letter to petitioner from Assistant Deputy Clerk Roger M. Fritts. In a letter dated October 2, 2009, the Appellate Division responded that, "According to information provided by the Schenectady County Court Clerk, a notice of appeal has not been timely filed." Dkt. No. 13-1 at SR 385. On October 26, 2009, petitioner wrote to his trial counsel and asked her to forward him a copy of the "Notice of Appeal" she "filed on [his] behalf" so that he could send it to the Appellate Division. Dkt. No. 13-1 at SR 282, letter from petitioner to Cheryl Coleman, Esquire. Petitioner explained that with "a copy of the notice [he would] be able to let the Appellate Court know that it was filed on time and [he] was waiting for the appointment of appellate counsel to represent [him] on direct appeal." *Id.* Petitioner also explained that he was proceeding pro se with assistance from the "Clinton Correctional Facility APPU Law Library in preparing this letter and all the other pleadings [he] will need in order to start the appeal of [his] conviction[.]" *Id.* Petitioner states that counsel did not respond to his letter. Dkt. No. 1-2 at 7.

Petitioner next filed a motion for an extension of time to file a notice of appeal, pursuant to New York Criminal Procedure Law ("CPL") §460.30(1)(a), in the Appellate Division, Third Department. His affidavit of service, affidavit in support of the motion, and

3

notice of appeal are dated January 19, 2010.  Dkt. No. 1-2 at 7; Dkt. No. 13 at SR 242, 249,

Affidavit of Service; SR 243-44, Affidavit of Defendant-Appellant; SR 248, Notice of Appeal.

Petitioner's letter to the Schenectady County Supreme Court Clerk enclosing the motion for

filing, and the Notice of Motion to Serve Late Notice of Appeal, are dated January 26, 2010.

Dkt. No. 13 at SR 239-40, letter from petitioner to Schenectady County Supreme Court Clerk

Sharon E. Sheffer; SR 241, Notice of Motion to Serve Late Notice of Appeal.  In the affidavit,

petitioner stated: counsel never advised him in writing of the right to appeal "as required by

*[22 NYCRR §§606.5(b), 671.3, 821.2(a), 1022.11(a)]*;" he was born in Guyana and came to

the United States at age 36 in 1997; he could "only read and spell minimal English;" and he

was receiving assistance "of the Law Library at Clinton C.F. to assist" him in filing his motion.

Dkt. No. 13 at SR 243-44 (emphasis in original).

On March 9, 2010, the prosecutor opposed petitioner's motion because it was time-

barred under CPL §460.30(1), which requires that a motion to file a late notice of appeal

"must be made with due diligence ... not more than one year" after the time to take the appeal

expired.  Dkt. No. 13 at SR 250, Letter in Opposition to Motion.

Petitioner filed a reply in which he stated that before he was sentenced, he told his

lawyer he "did not have the money to immediately appeal," but that he "wish[ed] to appeal

[his] conviction."  Dkt. No. 13 at SR 253, Reply.  He reiterated that he was under the

impression counsel filed a notice of appeal, and repeated the arguments contained in his

motion.  *Id.* at SR 253-54.

On April 12, 2010, the Appellate Division denied petitioner's motion.  Dkt. No. 13 at SR

256, Decision and Order on Motion.  On May 25, 2010, the New York Court of Appeals

dismissed petitioner's motion for leave to appeal because the Appellate Division's order was

4

"not appealable under Criminal Procedure Law, section 450.90(1)." Dkt. No. 13-1 at SR 261, Certificate Dismissing Application.

### C.    State Court Writ of Error Coram Nobis

On July 10, 2012, petitioner moved for a writ of error coram nobis in the Appellate Division, claiming he was denied his right to a "fair appeal." Dkt. No. 1-2 at 7-8; Dkt. No. 13-1 at SR 265-67, Petition; SR 268-80, Affirmation & Memorandum of Law in Support of a Petition for a *Writ of Error Coram Nobis* (emphasis in original). He argued that trial counsel was ineffective because she failed to file a timely notice of appeal. Dkt. No. 13-1 at SR 275-80.

Petitioner explained that once his motion for an extension of time to file a notice of appeal was denied, he was "under the belief that the only avenue left open to him in which to appeal his conviction was a motion to vacate judgment pursuant to C.P.L. §440.10." Dkt. No. 13-1 at SR 274. He stated that in an effort to prepare a CPL §440.10 motion, he wrote to the Schenectady County Clerk's Office on August 23, 2010, and September 10, 2010, and requested copies of the transcripts in his case. Dkt. No. 13-1 at SR 274; SR 286-87, Letters from petitioner to Schenectady County Clerk's Office dated August 23, 2010 and September 10, 2010. On September 17, 2010, the Clerk's Office responded that: (1) the judiciary was exempt from Freedom of Information Law requests; (2) the court could not "order the preparation of transcripts at taxpayer expense when there is no criminal action pending;" and (3) transcripts were in the "custody of the court reporter who took the minutes of the proceeding" and if petitioner wanted a copy, he should advise the clerk of the dates of the relevant court proceedings and the clerk would then "forward [his] request to the appropriate court reporter," who would advise petitioner of the "fee for the transcript." *Id.* at SR 288,

5

Letter to petitioner from Office of the Chief Clerk, Supreme & County Court. Petitioner again wrote to the Schenectady County Clerk on September 26, 2010, asking for all transcripts pursuant to the "Civil Practice Law and Rules §8019(f)." SR 289-91, Letters from petitioner to Schenectady County Clerk's Office dated September 26, 2010. The Clerk replied that he was not a "FOIL officer" and that petitioner's request was sent to Schenectady County Court. *Id.* at SR 290, Hand Written Notation on copy of petitioner's September 26, 2010 letter to the Clerk. Finally, on October 9, 2010, petitioner again demanded transcripts pursuant to "Civil Practice Law and Rules (C.P.L.R.) §8019(f)," and threatened to file an Article 78 petition if the Clerk did not send him the transcripts. *Id.* at SR 291, Letter from petitioner to Schenectady County Clerk John J. Woodward. Petitioner filed the Article 78 petition on November 30, 2010, and it was denied on February 29, 2012. Dkt. No. 13-1 at SR 262-63, New York State Unified Court System WebCivil Supreme - Case Detail.

Petitioner further stated in his coram nobis papers that on March 8, 2012, and April 15, 2012, he wrote to Sharon E. Sheffer, Schenectady County Court Clerk, and asked that she forward his request for transcripts to the appropriate court reporter. Dkt. No. 13-1 at SR 293-94, Letters from petitioner to Schenectady County Clerk Sharon E. Sheffer. He claimed he then "became aware of" *People v. Syville*, 15 N.Y.3d 391 (2010),[2] and "learned that the proper avenue for attacking his conviction was through a petition for a writ of error coram

---

[2] The "primary issue on appeal" in *Syville* was "whether a defendant who discovers s [sic] after the expiration of the CPL 460.30 grace period that a notice of appeal was not timely filed due to ineffective assistance of counsel has recourse through a coram nobis application." *Syville*, 15 N.Y.3d at 397. The New York Court of Appeals ruled that "coram nobis is the appropriate procedural course in New York" for a defendant to pursue a claim that "the right to appeal has been lost due solely to the unconstitutionally deficient performance of counsel in failing to file a timely notice of appeal." *Id.* at 397, 398. The remedy under a writ of coram nobis raising this kind of claim is to provide the defendant with an extended time to appeal, not to determine whether the arguments on appeal have merit or to grant relief on those claims. *Id.*

nobis." *Id.* at SR 274-75 (emphasis deleted).

The People opposed the writ, arguing that *Syville* was distinguishable and petitioner was not "reasonably diligent in exercising his right to appeal." Dkt. No. 13-1 at SR 297-301, Affirmation in Response to Error Coram Nobis; SR 302-21, Exhibits.

In reply, petitioner argued the Appellate Division should find that "it was not [his] fault that the Notice of Appeal was not filed in a timely manner, especially after [counsel] stated twice at [his] sentencing that she would be filing the Notice of Appeal on his behalf." Dkt. No. 13-1 at SR 326, Reply Brief; see SR 328-32, Affirmation & Memorandum of Law in Support of a Petitioners [sic] Reply to Respondent's Affirmation in Response to Petitioners [sic] Petition for a Writ of Error Coram Nobis (emphasis deleted). He also stated that he had difficulty communicating with counsel and "was not sure if he understood what was going on," and was "fully counting on" counsel to file the notice of appeal. *Id.* at SR 326.

On August 30, 2012, the Appellate Division denied the writ of error coram nobis. Dkt. No. 13-1 at SR 333, Decision and Order on Motion. On December 28, 2012, the New York Court of Appeals denied leave to appeal. *Id.* at SR 345, Order Denying Leave.

### D.     CPL §440.10 Motion

On December 23, 2013, petitioner filed a motion to vacate his conviction pursuant to CPL §440.10, arguing: (1) he was denied his due process right to a direct appeal because trial counsel failed to file a notice of appeal; (2) trial counsel was ineffective "during critical stages of his trial" because, among other things, counsel failed to properly cross-examine the victim's mother on her allegedly false testimony that she saw semen coming from the victim's vagina when the police laboratory report indicated no semen was found on the victim or her clothing; and (3) he was denied his due process right to a fair trial because "the disparity in

[his] sentence was clearly punishment for his exercising his right to refuse to plead guilty and go to trial instead." Dkt. No. 13-1 at SR 350-51, Affidavit in Support of Motion to Vacate Judgment; SR 352-75; Affirmation & Memorandum of Law in Support of a Motion to Vacate Judgment Pursuant to Criminal Procedure Law §440.10(H); SR 376-405, Exhibits. The People opposed the motion. *Id.* at SR 407-12, Affirmation in Response to Motion; SR 413-32, Exhibits. Petitioner filed a reply. *Id.* at SR 435-46, Affidavit in Reply; SR 447-59, Exhibits.

On July 9, 2014, the Schenectady County Court denied petitioner's motion. Dkt. No. 13-1 at SR 460-61. The court ruled that petitioner's remedy for "obtaining an extension of time to take an appeal is provided in CPL 460.30," and that petitioner "did not follow the provisions of that statute and is now time barred[.]" *Id.* at SR 460. The court noted that petitioner waited "3 years to contact the Appellate Division," and that he waited "5 years" from the date he was notified by the Appellate Division that his "time to appeal had expired" to file his section 440 motion. *Id.* at 460-61. The court further concluded that petitioner sought to "raise issues ... that could have been raised on direct appeal," and those claims were barred by CPL §440.10(2)(c). *Id.* at SR 461. Petitioner's trial counsel ineffectiveness claim was "without merit" because his "allegation that he now believes a witness should have been questioned differently does not by itself render counsel ineffective." *Id.* at SR 461. Finally, the court rejected petitioner's argument "that he was punished for going to trial and that his sentence is excessive," concluding that "the sentence was appropriate given the evidence that came out at trial." *Id.*

Petitioner sought leave to appeal, the People opposed his request, and petitioner filed a reply. Dkt. No. 13-1 at SR 466-67, Notice of Application; SR 468-70, Affidavit; SR Leave Letter with Exhibits; SR 471-81; Affirmation & Memorandum of Law in Support of an

8

Application Seeking Leave to Appeal to the Appellate Division, Second Department Pursuant to Section 460.15 of the C.P.L.; SR 482-87, Exhibits; SR 488-98; People's Opposition Letter with Exhibits; SR 502-21, Affidavit in Reply with Exhibits.  On September 18, 2014, the Appellate Division denied his motion.  Dkt. No. 13-1 at SR 522.

This action followed.

## III.  DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions.  28 U.S.C. § 2244(d)(1).  The one-year period generally begins to run from the latest of several events: the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review; the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed; the date on which the Supreme Court initially recognized the constitutional right on which the petitioner bases his habeas application if that right was newly recognized and made retroactively applicable; or the date on which the petitioner could have discovered the factual predicate for the claim or claims presented through the exercise of due diligence (newly discovered evidence).  28 U.S.C. § 2244(d)(1) (A)-(D); *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 652-63 (2012).

For purposes of section 2244(d)(1)(A), a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case.  *Thaler*, 132 S. Ct. at 653; *Saunders v. Senkowski*, 587 F.3d 543, 548-49 (2d Cir. 2009).

9

In this case, petitioner was sentenced on April 25, 2006 and did not timely appeal. His conviction therefore became "final" for purposes of the AEDPA on May 25, 2006, when the thirty days in which he could have sought appellate review of his conviction in state court expired. *See Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (per curiam) (the one-year statute of limitations began to run when the petitioner's time for filing a notice of appeal from the judgment of conviction expired); *Vaughan v. Lape*, No. 9:05-CV-1323, 2007 WL 2042471 at *4 (N.D.N.Y. July 12, 2007) ("In New York, a defendant has thirty days after the 'imposition of the sentence' to notify the court that he will appeal. N.Y. C.P.L. § 460.10(1)(a)."). Petitioner had until May 25, 2007, file a timely federal habeas petition. His petition, dated December 10, 2014,[3] is several years late under Section 2244(d)(1)(A).

Petitioner argues, however, that he instructed trial counsel to file a notice of appeal, and did not discover no notice was filed until the Appellate Division so informed him by letter dated October 2, 2009. Pet. at 6; Dkt. No. 19-1 at 14. He further argues that once he learned that no notice of appeal was filed, he began diligently pursuing his available state court remedies. Dkt. No. 19-1 at 14-15. Based upon petitioner's claims, respondent argues that the statute of limitations should be calculated under 28 U.S.C. §2244(d)(1)(D), and that the petition is nonetheless untimely. R. Mem. at 16-26. This Court agrees.

Under Section 2244(d)(1)(D), the limitations period does not begin running until "the date on which the factual predicate of the claim ... could have been discovered through the exercise of due diligence." 28 U.S.C. §2244(d)(1)(D). This section is not a tolling provision,

---

[3] Under the "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988); *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001).

but instead "resets the limitations period's beginning date, moving it from the time when the conviction became final ... to the later date on which the particular claim accrued." *Herring v. Superintendent*, No. 1:09-CV-7610, 2010 WL 5463869 at *3 (S.D.N.Y. Dec. 2, 2010) (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)), *adopted by* 2010 WL 5396081 (S.D.N.Y. Dec. 29, 2010).

The term "factual predicate" refers only to the facts vital to the claim, and not to "[c]onclusions drawn from preexisting facts, even if the conclusions are themselves new[.]" *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012); *see Patel v. D. Martuscello*, No. 1:10-CV-4804, 2011 WL 703943, at *3 (E.D.N.Y. Feb. 16, 2011) (the limitations period under section 2244(d)(1)(D) "deals only with the discovery of predicate facts, not their legal significance."). If the facts or evidence existed at an earlier date, even if unknown to a petitioner, it cannot later be described as "newly discovered." *Rivas*, 687 F.3d at 535. Finally, Section 2244(d)(1)(D) "'does not convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might ... support his claim.'" *Lucidore v. New York State Div. of Parole*, No. 1:99-CV-2936, 1999 WL 566362 *5 (S.D.N.Y. Aug. 3, 1999) (quotation omitted), *aff'd* 209 F.3d 107 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000).

The date on which a reasonably diligent person would have discovered that no appeal was filed is fact-specific, and depends upon factors including the conversation petitioner had with his attorney and the conditions of the petitioner's confinement. *Wims*, 225 F.3d at 189-91. Petitioner claims that before he was sentenced, he told counsel "he did not have the money to retain her to represent him on appeal," but made it clear to counsel "he wanted to appeal his conviction." Dkt. No. 1-2 at 6. His belief that counsel filed a notice of appeal on

his behalf appears to have been reasonable.  At sentencing, counsel stated that a notice of appeal would be filed, and that she would "take the step" of doing so "on [petitioner's] behalf." Dkt. No. 13 at SR 237-38.

The question becomes whether petitioner acted with due diligence by waiting until September 2009 to inquire about the status of his appeal - a delay of over three years from the date of sentencing.  *Wims*, 225 F.3d at 190.  According to petitioner, counsel told him an appeal could take three to five years, and he wrote "several letters" to counsel after he was sentenced asking the status of his appeal, but counsel did not respond, leaving him to believe a notice of appeal was filed.  Dkt. No. 1-2 at 6; Pet. at 6.  Petitioner has not included copies of any of the letters he sent to counsel between the date of sentencing and September 2009. He also has not explained why, if those letters went unanswered, he did not inquire at the Appellate Division sooner.  His claims that he believed counsel's silence meant a notice of appeal was filed and that appeals could take several years to be decided in New York courts do not "explain why it was reasonable for him to wait" over three years "before contacting the court to inquire about the status of his appeal."  *Morton v. Ercole*, No. 1:08-CV-0252, 2010 WL 890036 at *2-3 (S.D.N.Y. Mar. 10, 2010) .

Petitioner also claims the delay is justified because he can "barely read and write and understand" English, and relied upon inmate law clerks to assist him with his legal work.  Dkt. No. 16 at 1.  But he also claims that inmate clerks helped him "write letters to his trial lawyer" asking about the status of his appeal "long before 3 ½ years" passed from the date of sentencing.  *Id.*  Petitioner offers no reason for why he could not have sought the same assistance to inquire about the status of his appeal by contacting the Appellate Division prior to September 2009.

Based on the record, and the length of the delay in this case, the Court is hard pressed to find that petitioner acted with due diligence and could not have discovered that no notice of appeal was filed sooner than October 2, 2009. *Wims*, 225 F.3d at 191; *see Morton*, 2010 WL 890036 at *2-3 (delay of "nearly seven years" did not "exhibit due diligence"); *Tineo v. United States*, No. 1:01-CV-4511, 2002 WL 1997901 at *2 (S.D.N.Y. Aug. 29, 2002) (duly diligent person would not have needed three years to discover his counsel did not file a notice of appeal); *Zapata v. United States*, No. 1:99-CV-0085, 2000 WL 1610801 at *2 (S.D.N.Y. Oct. 27, 2000) (three and one half years to discover that no appeal was filed did not constitute due diligence).

Even assuming petitioner was diligent and could not have discovered counsel failed to file a notice of appeal earlier than October 2, 2009, the petition is untimely. Under that scenario, petitioner had one year from that date, or until October 2, 2010, to file a timely federal petition. 28 U.S.C. §2244(d)(1)(D); *see Wims*, 225 F.3d at 189 ("if the date on which the facts supporting" the petitioner's ineffective assistance claim "could have been discovered through the exercise of due diligence was no earlier than February 24, 1998," one year before the federal petition was filed on February 24, 1999, his "petition was timely filed.").

### A.    Statutory tolling

The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009). The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of

13

limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam). The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the application was taken. *Saunders*, 587 F.3d at 548; *Smith*, 208 F.2d at 16.

Here, petitioner's motion for permission to file a late notice of appeal was filed on January 19, 2010.[4] Dkt. No. 24 at SR 16-20. At that point, 109 days of the one-year statute of limitations expired, leaving 256 days remaining. The statute of limitations was tolled from January 19, 2010 until April 12, 2010, when the Appellate Division denied his motion.[5] *Smith,* 208 F.3d at 16. The limitations period began to run again on April 13, 2010, and expired on December 28, 2010.[6]

Some courts have also found that where "a petitioner's underlying claim for habeas relief is premised on the denial of his right to a direct appeal, the limitations period begins only upon the Appellate Division's denial of permission to file a late notice of appeal." *Herring*, 2010 WL 5463869 at *3 (citing *Perich v. Mazzuca*, No. 1:05-CV-2942, 2007 WL 2455136 at *6 (E.D.N.Y. Aug. 23, 2007) and *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir.

---

[4] As noted, some of petitioner's papers were dated January 19, 2010, and others were dated January 26, 2010. Dkt. No. 13 at SR 230-40, 241, 242, 249, 243-44, 248. In light of petitioner's pro se status, the Court will use the earlier date.

[5] Petitioner sought leave to appeal the Appellate Division's decision. On May 25, 2010, the New York Court of Appeals dismissed his appeal because the Appellate Division's order was "not appealable under Criminal Procedure Law, section 450.90(1)." Dkt. No. 13-1 at SR 261. Therefore, the time this application was pending is not tolled because the relief sought is not recognized in New York. CPL § 450.90(1); *Cedeno v. Conway*, 724 F. Supp. 2d 373, 377 (W.D.N.Y. 2010). Even if the Court tolled the time the leave application was pending, the petition would still be untimely.

[6] The 256 days left on the limitations period actually expired on December 25, 2010, a Saturday, and the following Monday, December 27, 2010, was a legal holiday. Petitioner therefore had until Tuesday, December 28, 2010, to timely file his petition under this scenario. Fed. R. Civ. P. 6(a)(1)(C).

2006)).[7]  Here, the Appellate Division denied petitioner's motion to file a late notice of appeal on April 12, 2010.  Using that date, the statute of limitations would have expired one year later, on April 12, 2011.  *Herring*, 2010 WL 5463869 at *4.

Petitioner wrote letters to the Schenectady County Court between August 2010 and October 2010 in an effort to obtain transcripts he believed he needed in order to pursue a CPL §440.10 motion.  Dkt. No. 13-1 at SR 286-87, 289-91.  On November 30, 2010, when his requests were unsuccessful, he filed an Article 78 petition to compel the Schenectady County Clerk to provide him with the transcripts.  *Id.* at SR 262-63.  His petition was denied on February 29, 2012.  *Id.*  To the extent petitioner argues these filings should statutorily toll the limitations period, that argument is without merit.  State court filings that seek documents or other information that could aid a petitioner in developing a state court challenge to his or her underlying conviction do not operate to statutorily toll the AEDPA limitations period. *Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001); *Gould v. West*, No. 1:05-CV-602, 2007 WL 2323108 at *4 (S.D.N.Y. Aug. 15, 2007); *Duamutef v. Mazzuca*, No. 1:01-CV-2553, 2002 WL 413812 at *7 (S.D.N.Y. Mar. 15, 2002).

Finally, petitioner's application for a writ of error coram nobis (dated July 10, 2012) and his CPL §440 motion (dated December 23, 2013) do not operate to statutorily toll the limitations period because each application was filed and decided after the one-year

---

[7]  The *Perich* court cited to *Johnson v. United States*, 544 U.S. 295 (2005) for the proposition that the petitioner's claim he was unconstitutionally denied his right to appeal did not accrue until the Appellate Division denied direct review.  *Perich*, 2007 WL 2455136 at *6.  In *Johnson*, the question was "when the 1-year statute of limitations in 28 U.S.C. § 2255, ¶ 6(4) [the analogous "date of discovery" provision for federal prisoners] begins to run in a case of a prisoner's collateral attack on his federal sentence on the ground that a state conviction used to enhance that sentence has since been vacated."  *Johnson*, 544 U.S. at 298.  The Supreme Court held that "the period begins when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence."  *Id.*

limitations period expired.  28 U.S.C. § 2244(d)(2); *Smith*; 208 F.3d at 16-17; *see Monroe v. Rock*, No. 6:09-CV-6366, 2011 WL 1792926 at *2 (W.D.N.Y. May 10, 2011) (explaining that statutory tolling applies only if a state court application for relief was pending during the one-year limitations period).

### B.    Equitable tolling

The AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases."  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008).  The standard for evaluating a claim of extraordinary circumstances is one that focuses not on "the uniqueness of a party's circumstances," but instead on "the severity of the obstacle impeding compliance with a limitations period."  *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *see Rivas*, 687 F.3d at 538 (whether a circumstance is extraordinary depends on "how severe an obstacle it is for the petitioner endeavoring to comply with the AEDPA's limitations period.") (quoting *Diaz*, 515 F.3d at 154).

A petitioner must show not only that extraordinary circumstances existed, but that those circumstances "caused him to miss the ... filing deadline."  *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).  Claims of extraordinary circumstances must be supported with evidence and not merely with conclusory allegations.  *Reid v. Atty Gen., State of New York*, No. 9:04-CV-0178 (TJM/RFT), 2008 WL 3049870 at *6 (N.D.N.Y. Aug. 1, 2008).  Additionally, a petitioner must have acted with "reasonable diligence throughout the period he seeks to toll[.]"  *Harper*, 648 F.3d at 138 (quoting *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007)).  If

16

a petitioner did not exercise reasonable diligence after the extraordinary circumstance began, "the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003) (quoting *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)); *Mason v. Pool*, 554 F. Supp. 2d 391, 397-98 (W.D.N.Y. 2008).

### 1.    Ineffective Assistance of Trial Counsel

Petitioner first argues that he is entitled to equitable tolling based upon trial counsel's failure to file a notice of appeal.  An attorney's simple mistakes or ordinary negligence normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period, but conduct that rises to the level of ineffective assistance can "be so outrageous or so incompetent as to render it extraordinary."  *Baldayaque*, 338 F.3d at 152. The Supreme Court has explained that a lawyer who disregards a timely request to file a notice of appeal "acts in a manner that is professionally unreasonable" because "a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citations omitted).  The result of counsel's failure to file a notice of appeal was to deny petitioner "recourse to an appeal as of right," and the "prejudice to the petitioner is such that the error can be said to be an extraordinary circumstance that tolls the statute of limitations."  *Herring*, 2010 WL 5463869, at *5 (internal quotation marks omitted); *see Morton*, 2010 WL 890036, at *4.

Assuming petitioner diligently pursued his rights between the date of sentencing and October 2, 2009, and that counsel's failure to file a notice of appeal constituted an extraordinary circumstance, he would only be entitled to equitable tolling from April 25, 2006

17

to October 2, 2009.  That is so because the "extraordinary circumstances that thwarted his efforts to appeal his conviction ended" after petitioner "learned that no appeal had been filed." *Herring*, 2010 WL 5463869, at *6, 9.  Petitioner then "had open to him the entire universe of state and federal collateral challenges to his conviction." *Id.* at *6.  He has not shown any causal relationship between counsel's failure to file a notice of appeal - known to him by October 2, 2009 - and his failure to file his federal petition until December 2014. *Harper*, 648 F.3d at 137; *see Tarafa v. Artus*, No. 1:10-CV-3870, 2013 WL 3778795, at *6 (S.D.N.Y. Mar. 11, 2013) ("petitioner's attorney's alleged failure to file a promised appeal did not necessarily foreclose petitioner's own efforts at filing a habeas petition nor did it cause that petition to be untimely."), *adopted as modified* 2013 WL 3789089 (S.D.N.Y. July 18, 2013).

### 2. Petitioner's mistaken belief regarding how to pursue his rights in state courts/lack of transcripts

Petitioner next argues that he mistakenly believed he had to challenge his conviction by filing a CPL §440.10 motion, and began seeking trial transcripts in order to complete and file a CPL §440.10 motion as early as August 23, 2010.  Those efforts culminated in an Article 78 petition seeking to compel production of the transcripts that was denied on February 29, 2012, and he continued to seek transcripts in March and April 2012.  He eventually received at least partial transcripts in April 2013.  Dkt. No. 1-2 at 6-7.

Petitioner's misunderstanding of the procedural requirements for exhausting his claims in the state courts does not warrant equitable tolling.  *See Jenkins v. Greene*, 630 F.3d 298, 305  (2d Cir. 2010) ("Jenkins did not file his federal petition within the allowable time limit, and his explanation for his failure to do so boils down to the claim that he was thwarted by a mistaken reading of New York case law to impose a requirement that did not in fact exist.

18

Under the law, such a mistaken belief is not a basis for equitable tolling."); *Adkins v. Warden*, 585 F. Supp. 2d 286, 297 (D. Conn. 2008) ("Most courts also recognize that lack of knowledge and education about the law and one's legal rights is not an extraordinary circumstance because tolling for this common obstacle that most petitioners face would undermine the legislative decision to impose a one-year limitations period.").

Difficulty obtaining transcripts also does not constitute an extraordinary circumstance that warrants equitable tolling. *Sookoo v. Heath*, No. 1:09-CV-9820, 2011 WL 6188729 at *4 (S.D.N.Y. Dec. 12, 2011). Moreover, petitioner does not explain why the transcripts were necessary to bring his Section 440 motion, and therefore has not established a causal connection between the lack of transcripts and his late filing. *See Williams v. Phillips*, No. 1:04-CV-4653, 2005 WL 1806161 at *9 (S.D.N.Y. Aug. 2, 2005) (the statute of limitations under Section 2244(d)(1)(D) "runs from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim.") (citation omitted); *Duamutef v. Mazzuca*, 1:01-CV-2553, 2002 WL 413812 at *9 (S.D.N.Y. Mar. 15, 2002) (limitations period begins to run when the petitioner knows, or through diligence could have discovered, the facts underlying his claim, not when he recognizes their legal significance).

### 3.     Language deficiency and education

Petitioner next claims he is entitled to equitable tolling because he can "barely read and write and understand the [E]nglish language" and had inmate law clerks assist him. Dkt. No. 16, Letter Brief; *see also* Dkt. No. 1-2 at 6-7 (stating he can "barely understand English and had a reading level of about 'Grade One'"); 19-22 (stating he had a "first to second grade educational reading level" and limited "understanding of the [E]nglish language"); Dkt. No. 19-

19

1 at 18 (referencing his "very low educational level"). He argues that these circumstances prevented him from acting with due diligence. Dkt. No. 19-1 at 18-19; *see* Pet. at 6 (stating that he is an "uneducated man from Guyana who had a reading level equivalent to a 'First Grader at best' who could barely understand english[.]").

Petitioner's education level and difficulty understanding the law does not warrant equitable tolling. *See Artis v. Huliahn,* No. 1:09-CV-9893, 2010 WL 4668926 at *4, n.3 (S.D.N.Y. Nov. 12, 2010) ("petitioner's allegation that he has a low level of academic achievement is insufficient to meet equitable tolling."); *Hill v. Superintendent, Gowanda Corr. Facility*, No. 1:08-CV-4508, 2009 WL 560690 at *3 (E.D.N.Y. Mar. 4, 2009) (pro se petitioners "bear[] the burden of learning the applicable procedural rules in federal court and abiding by them when seeking review."); *Scott v. Comm'r of Corr.*, No. 3:07-CV-1420, 2008 WL 5172644 at *3 (D. Conn. Dec. 10, 2008) (lack of education argument was "insufficient to warrant equitable tolling."); *Worsham v. West*, No. 1:05-CV-0530, 2006 WL 2462626, *2 (S.D.N.Y. Aug. 23, 2006) ("Mere ignorance of the law does not qualify as an extraordinary circumstance warranting equitable tolling in habeas cases.").

In some circumstances, language deficiency may qualify as a circumstance warranting equitable tolling. *Diaz*, 515 F.3d at 154. The relevant inquiry is "how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period," and "the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language deficiency." *Id.*; *see Adames v. Artus*, No. 1:10-CV-0398, 2011 WL 813627 at *6 (S.D.N.Y. Jan. 20, 2011) (citing *Diaz* and noting that petitioner's limited ability to communicate in English did not warrant tolling because he "failed to allege that he took diligent steps to mitigate his difficulties with the

English language.").

In this case, petitioner does not explain what steps he took in an effort to mitigate any language deficiency. He does state, however, that he used the assistance of inmate law clerks to prepare and file his legal documents and letters, suggesting that his language deficiency and education level did not impede his ability to pursue his state or federal court remedies. Petitioner has not shown that either his language limitation or education level rendered him unable to pursue his legal rights during the relevant time period. *See Diaz*, 515 F.3d at 154 ("[t]here is no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement."); *Green v. Sheehan*, No. 1:12-CV-0665, 2014 WL 338832 at *6 (W.D.N.Y. Jan. 30, 2014) ("To the extent that Green relies on his below-average intelligence to support his equitable tolling claim, courts have in general found that and similar conditions insufficient to constitute extraordinary circumstances.") (collecting cases); *Dowicyan v. Larkin*, No. 1:12-CV-5157, 2013 WL 4028155 at *6-7 (S.D.N.Y. Jun. 20, 2013) (finding petitioner failed to show that reduced mental capacity prevented him from timely filing his habeas petition, and finding that his participation in state court litigation demonstrated that he was "capable of pursuing his rights in a timely manner."); *Cannon v. Kuhlmann*, No. 1:99-CV-10101, 2000 WL 1277331 at *2 (S.D.N.Y. Sept. 7, 2000) ("Cannon's statements that since approximately 1995 he has been 'under the direct care of the Special Needs Unit[ ] at Sullivan Correctional Facility' because he has a 'learning disability,' 'very low intelligence,' 'suffers from loss of memory,' and 'takes psychiatric medication,' are insufficient to justify tolling.") (alterations in original).

Finally, to the extent petitioner's papers may be interpreted to raise an argument that the assistance he received from inmate law clerks was deficient, that argument does not warrant equitable tolling. "There is no absolute right to counsel or other legal assistance in connection with a habeas corpus petition." *Adames*, 2011 WL 813627 at *6; *see McCleskey v. Zant*, 499 U.S. 467, 495 (1991); *Tarafa*, 2013 WL 3778795 at *8.

### 4. Pro se status

Petitioner urges the Court to read his papers liberally, and to hold them to a less stringent standard. Dkt. No. 19 at 1-2. To the extent he is arguing that his pro se status warrants equitable tolling, that argument fails. *Jenkins,* 630 F.3d at 305; *see Smith,* 208 F.3d at 18 (a petitioner's pro se status does not establish sufficient ground for equitable tolling); *Ayala v. Miller*, No. 1:03-CV-3289, 2004 WL 2126966 at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's pro se status, nor his lack of expertise, provides a basis for equitable tolling of AEDPA's statute of limitations.").

In sum, petitioner is not entitled to equitable tolling.


### C. Actual Innocence

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928, 1931 (2013); *Rivas*, 687 F.3d at 551-52. "'Actual innocence' means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are

rare[.]" *McQuiggin*, 133 S. Ct. at 1928.  To be successful, petitioners asserting innocence as

a gateway to federal habeas review when the statute of limitations has expired must establish

that, "in light of new evidence, no juror acting reasonably, would have voted to find him guilty

beyond a reasonable doubt." *Id.* at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995));

*see House v. Bell*, 547 U.S. 518, 536-37 (2006) (petitioners "asserting innocence as a

gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely

than not that no reasonable juror would have found petitioner guilty beyond a reasonable

doubt.'") (quoting *Schlup,* 513 U.S. at 327).  This standard "is demanding and permits review

only in the 'extraordinary' case." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327)

(further citations omitted).  As the Supreme Court has explained, "[t]he gateway should open

only when a petition presents 'evidence of innocence so strong that a court cannot have

confidence in the outcome of the trial unless the court is also satisfied that the trial was free

of nonharmless constitutional error.'" *McQuiggan*, 133 S. Ct. at 1936 (quoting *Schlup*, 513

U.S. at 316).

     Here, petitioner argues that he is actually innocent because "it is more likely than not

that no reasonable juror would have convicted him of rape in light of the prosecution's very

own Scientific Evidence[.]"  Dkt. No. 19 at 4.  Specifically, he points out that the victim's

mother testified at grand jury that the victim's underwear was "filthy" and she saw "[s]emen all

on the lining and outside" of the victim's vagina.  Dkt. No. 19-2 at 6-7.  Petitioner states that

the emergency room doctor who examined the victim found "No Evidence of Trauma," and

the victim's hymen was in tact, proving she was not raped.  Dkt. No. 19-1 at 2-3, 10-17; Pet.

at 6-7; Dkt. No. 1-2 at 12-19.  He also points to lab reports showing that swabs taken from the

victim's vagina and underwear tested negative for sperm and seminal fluid.  Dkt. No. 1-2 at

23

12-19; Dkt. No. 13-1 at SR 390 and Dkt. No. 19-2 at 8, Lab Report, Aug. 1, 2005. According to petitioner, the lab reports "unquestionably prov[e] the victim[']s mother was allowed to give false testimony." Dkt. No. 19-1 at 17. He further argues that trial counsel did not "alert" the trial court or the jury that the lab report "was incontrovertible proof" that the victim's mother lied and that the victim was not raped. Dkt. No. 1-2 at 12; Dkt. No. 19-1 at 5-10.

Petitioner's arguments are not based on new evidence. To the contrary, petitioner's arguments are based on the content of lab reports prepared at the time of his trial, and to trial and grand jury transcripts. Dkt. No. 13-1 at SR 387-388 and Dkt. No. 19-2 at 6-7, Grand Jury Transcript; *see* Dkt. No. 19-1 at 12 ("As petitioner already states in this Reply Motion, it was 'Grand Jury' testimony where the victims [sic] mother was in fact allowed to falsely testify that she examined her daughter and saw semen coming out the lining of her vagina, and her hair[.]").

Petitioner asserts claims that a "good portion" of the "evidence" he cites in support of his actual innocence claim was not presented at trial, Dkt. No. 19-1 at 17, but his own papers appear to refute that argument. Petitioner states that the People called an expert witness to testify about the absence of trauma and why a child rape victim might have an intact hymen, suggesting that at least the results of forensic testing were admitted during trial and the meaning of those results was in dispute. Dkt. No. 19-1 at 2-3; Dkt. No 19-2 at 1-3. Petitioner's apparent disagreement with the method by which counsel presented his defense or cross-examined the victim's mother (and other prosecution witnesses) does not constitute "new evidence" as that term is defined by the Supreme Court.[8] *McQuiggin*, 133 S. Ct. at

---

[8] It is also worth noting petitioner did not testify at grand jury. *See* Dkt. No. 13-1 at SR 437 (alleging petitioner was denied the right to testify before the grand jury). Therefore, defense counsel would not have been permitted to be present during the grand jury proceedings, much less question witnesses. CPL §190.25(3)(f)

1928; *Schlup*, 513 U.S. at 327.

Finally, to the extent petitioner is arguing that the evidence was insufficient, or that his rape conviction was against the weight of the credible evidence, those claims also do not constitute "new" evidence of actual innocence. *McQuiggin*, 133 S. Ct. at 1928; *Dunham*, 313 F.3d at 730.

In sum, petitioner fails to identify any new evidence of factual, actual innocence. He therefore failed to set forth a credible claim of actual innocence which would warrant considering his otherwise time-barred petition. *McQuiggin*, 133 S. Ct. at 1928, 1931; *see Rivas*, 687 F.3d 514, 518 (2d Cir. 2012) (finding petitioner raised a "credible and compelling claim of actual innocence" that was "based on new information not presented to the jury that dramatically undermines the central forensic evidence linking him to the crime of which he was convicted. In sum and substance, Rivas has shown, through the essentially unchallenged testimony of a respected forensic pathologist, that the victim was almost certainly killed at a time when Rivas had an uncontested alibi, and not earlier, as the prosecution had contended at his trial.").

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DISMISSED AS UNTIMELY**; and it is

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §

---

(stating an attorney who represents a witness may be present during that witness's testimony); CPL §190.52 (1), (2) ("Any person who appears as a witness and has signed a waiver of immunity in a grand jury proceeding, has a right to an attorney... The attorney for such witness may be present with the witness in the grand jury room. The attorney may advise the witness, but may not otherwise take any part in the proceeding.").

2253(c)(2) requires.[9]  Any further request for a COA must be addressed to the Court of

Appeals (Fed. R. App. P. 22(b)); and it is

      **ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in

accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 4, 2016
      Albany, NY

Mae A. D'Agostino
U.S. District Judge

---

[9] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (holding that "§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'"); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).